IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GLORIA SADLER,  )
  )
        Plaintiff,  )
  )  CIVIL ACTION NO. 3:12-133
v.  )  JUDGE KIM R. GIBSON
  )
COUNTY OF BEDFORD,  )
  )
        Defendant.  )

## MEMORANDUM AND ORDER OF COURT

### I. SYNOPSIS

This matter comes before the Court on Defendant County of Bedford's Motion to Dismiss (Doc. No. 5) pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant seeks dismissal of Plaintiff Gloria Sadler's Complaint with prejudice. (See Doc. No. 5 at 3; Doc. No. 5-1; Doc. No. 6 at 9.) Plaintiff opposes Defendant's Motion. (See generally Doc. No. 8; Doc. No. 9.) For the reasons that follow, Defendant's Motion to Dismiss is **DENIED**.

### II. JURISDICTION AND VENUE

This court exercises subject-matter jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 42 U.S.C. §2000e-2(a), and 42 U.S.C. § 2000e-5(f), and over Plaintiff's state claim pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b).

### III. FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises from the cessation of Plaintiff's employment as a Lieutenant for the Bedford County Prison. (See Doc. No. 1 at 1, 3). Plaintiff began her employment with the Defendant, which operates Bedford County Prison, in 1997 as a corrections officer. (Id. at 1).

---

[1] In light of the procedural posture of this case, the Court accepts as true the factual allegations of Plaintiff's Complaint. See infra Part IV.

1

She was promoted in 1998 to officer in charge and was promoted again in 2006 to Lieutenant, the position Plaintiff held at the time the events relevant to the instant action allegedly took place. (See id. at 1-3.) As a Lieutenant, Plaintiff's work schedule was limited to 20 hours per week because of documented medical conditions. (Id.) Plaintiff primarily worked weekends as a result of her limited work schedule. (Id.)

In March 2010, Plaintiff became the subordinate of Donald Orr when Mr. Orr was hired by the County of Bedford to serve as the Prison's warden. (See id. at 2.) As Warden, Mr. Orr was responsible for the Prison staff, of which Plaintiff was a member. (Id.) Immediately after Warden Orr was hired, Warden Orr changed Plaintiff's schedule so that Plaintiff was working "every single weekend with no weekends off." (Id.) This was a substantial change in the terms and conditions of Plaintiff's employment. (Id.) Following this change, Plaintiff requested the opportunity to discuss with Warden Orr the manner in which he changed her schedule. (Id.) Warden Orr refused Plaintiff's request. (Id.)

Plaintiff alleges that, as warden, Warden Orr would treat men more favorably than women and, when given a choice between selecting a male corrections officer or female corrections officer to perform a particular job, Warden Orr always chose a male to perform the job. (See id.) Warden Orr ignored female corrections officers and turned his back to them when they spoke to him, a behavior Warden Orr did not engage in when speaking with male corrections officers. (See id.) Warden Orr also spoke to female corrections officers in a derogatory manner, with the intent to belittle and dehumanize them. (Id.) Warden Orr did not speak to male officers in such a manner. (See id.) Warden Orr was repeatedly heard to opine that the Prison was not a place for women. (See id.)

On April 15, 2010, Plaintiff spoke to Warden Orr at the regular Lieutenants' meeting about having to work every weekend, at which time Warden Orr again ignored her. (Id. at 3.) Plaintiff attempted to discuss the matter with Warden Orr again the following day, but Warden Orr aggressively pointed his finger in her face and screamed, "You will work when I tell you to work," before turning his back on Plaintiff and refusing to discuss the situation with her. (Id.) Defendant never made any attempt to address the concerns of female corrections officers respecting the conduct of Warden Orr. (Id.) Finally, Plaintiff alleges that Warden Orr's continued harassment towards her and the other female corrections officers created a work environment that was so intolerable that Plaintiff was "forced out" of her position. (Id.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission and was issued a Notice of Right to Sue on August April 7, 2012. (Id.) Plaintiff filed her Complaint (Doc. No. 1) on July 2, 2012. The Complaint asserts one Count for violation of Title VII[2]—specifically, a claim for sex discrimination/hostile work environment—and one Count for violation of Section 5 of the Pennsylvania Human Relations Act. (See Doc. No. 1 at 3-5.) Plaintiff seeks a declaration that the practices of the Defendant are unlawful; damages for her loss of earnings, wages, and benefits; damages for emotional pain, suffering, inconvenience, and mental anguish; an assignment to the job she would now be occupying if the discriminatory practices of Defendant had not occurred; punitive damages; and costs. (See id.)

On August 30, 2012, Defendant filed its Motion to Dismiss (Doc. No. 5), accompanied by a Brief in Support (Doc. No. 6). Plaintiff filed a Response to Defendant's Motion (Doc. No. 8), accompanied by a Brief in Opposition (Doc. No. 9) on September 20, 2012. Defendant's Motion is now ripe for disposition.

---

[2] Although Plaintiff's first count is written as "Title VIII," the Court will proceed under the assumption that Plaintiff intended to file under Title VII because the allegations contained within the complaint are relevant to a Title VII claim (employment discrimination) and not a Title VIII claim (housing).

3

## IV.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a complaint or portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to avoid dismissal under Rule 12(b)(6), a pleading party's complaint must provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "nudge [his or her] claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

While the decisions of the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), represented a significant change in federal pleading standards, the United States Court of Appeals for the Third Circuit has provided clear guidance to district courts. To determine the sufficiency of a complaint under the pleading regime established by *Twombly* and *Iqbal*, a court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

A claim is plausible on its face when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 US. at

4

678). In determining whether the well-pleaded factual allegations plausibly give rise to an entitlement for relief, the court must be mindful that the matter pleaded need not include "detailed factual allegations." See *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555). Moreover, a pleading party "need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 213 (3d Cir. 2009). However, the factual allegations "must be enough to raise a right to relief above the speculative level." *Phillips*, 515 F. 3d at 232 (quoting *Twombly*, 550 U.S. at 555). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556 n.3). "[L]egal conclusions" and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" as bona fide factual material. *Iqbal*, 556 U.S. at 678. If a district court determines that a complaint is vulnerable to 12(b)(6) dismissal, the court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F. 3d at 236.

## V. DISCUSSION

In her Complaint, Plaintiff advances claims for sex discrimination[3] pursuant to Title VII of the Civil Rights Act and Section 5 of the Pennsylvania Human Relations Act against Defendant. In its Motion to Dismiss and Brief in Support, Defendant contends that Plaintiff fails to allege facts sufficient to state a claim for which relief can be granted. (See Doc. No. 5 at 1, 3; Doc. No. 6 at 3-4, 6-9.) Specifically, Defendant argues that Count I should be dismissed because Plaintiff has (1) "failed to set forth any statement of the claim as required under [Federal Rule of Civil Procedure 8(a)]" and (2) "failed to state a claim upon which relief can be granted based

---

[3] Defendant construes Plaintiff's Complaint as alleging a hostile work environment claim; Plaintiff has not argued to the contrary.

5

upon a lack of facts in the Complaint." (Doc. No. 5 at 1-2; see Doc. No. 6 at 8.) Plaintiff contends that the Complaint sets forth a statement of the claim and is factually sufficient under the standard required by *Twombly* and *Iqbal*. (See generally Doc. No. 8; Doc. No. 9).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(l). Similarly, Section 5 of the Pennsylvania Human Relations Act ("PHRA") makes it unlawful for an employer to discriminate against an individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract because of the race, color, religious creed, ancestry, age, sex, national origin, or non-job related handicap or disability or the use of a guide or support animal of any individual or independent contractor, if the individual or independent contractor is the best able and most competent to perform the services required. 43 Pa. Cons. Stat. § 955(a). Claims brought pursuant to the PHRA are interpreted coextensively with Title VII claims. *Atkinson v. Lafayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); see also *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996). Because the analysis of Plaintiff's federal and state law claims is identical, see *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001); *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000), the Court will address both claims simultaneously.

"A hostile work environment exists when a workplace is permeated with discriminatory intimidation, ridicule and insult so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Warmkessel v. East Penn Mfg.*, No. 03-02941, , at *7 (E.D. Pa. July 28, 2005); see also *AMTRAK v. Morgan*, 536 U.S. 101, 116

6

(2002); *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). To state a hostile work environment claim under Title VII, a plaintiff must plead sufficient factual matter to support a plausible inference that (1) the employee suffered intentional discrimination because of his or her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) there is a basis for employer liability. *Brown-Baumbach v. B&B Automotive, Inc.*, 437 F. App'x 129, 132-133, 133 n.5 (3d Cir. 2011) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)) (explaining that although the Third Circuit has often stated that discriminatory harassment must be "pervasive and regular," the Supreme Court's "severe or pervasive" standard controls); *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

To determine whether the work environment is hostile or abusive, courts must look "at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23 (1993). Title VII is not, however, a "general civility code" and "does not prohibit 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." *Id.* at 788 (internal citation omitted).

7

Here, Plaintiff has raised the following factual allegations: her supervisor, Warden Orr, would choose men over women for jobs, would speak to women—but not men—in a derogatory manner—would say that women did not belong, would ignore female—but not male—corrections officers and turn his back while female employees spoke to him, ignored the Plaintiff on at least two occasions and turned his back on the Plaintiff when she attempted to speak with him, and changed Plaintiff's work schedule in a substantial way and refused to discuss Plaintiff's work schedule with her.

Defendant contends that Plaintiff has failed to plead sufficient facts to support her claims. (See Doc. No. 6 at 9). Specifically, Defendant asserts that Plaintiff's claim fails to allege that certain statements were made directly to Plaintiff[4] or that Plaintiff overheard Warden Orr's comments and that "there was no time frame provided by Sadler to identify the circumstances surrounding the alleged statements or actions by Warden Orr." (*Id.* at 8.) Plaintiff, however, alleges that Warden Orr changed Plaintiff's work schedule "[a]s soon as [he] was hired" in March 2010. (*Id.* at 2.) Plaintiff further identifies instances of alleged harassment on two dates in April (see *id.* at 3) and has drafted her Complaint in a manner in which one can reasonably infer that the other conduct complained of occurred on a regular basis (see, e.g., *id.* at 2 ("when Warden Orr had a choice of a male or female to perform a particular job, he *always* chose the male for the job" (emphasis added))). Because a hostile work environment involves repeated conduct, the unlawful employment practice "cannot be said to occur on any particular day." *AMTRAK*, 536 U.S. at 115 (2002). Rather, "[s]uch claims are based on the cumulative affect [*sic*] of individual acts." *Id.* Here, Plaintiff has alleged repeated conduct, the sum of which she claims "forced [her] out" of her position. (Doc. No. 1 at 3.)

---

[4] Although unclear, Defendant appears to be alluding to the repeated statements made by Warden Orr that the Prison was not a place for women.

8

Plaintiff's Complaint does not provide the date on which Plaintiff was ultimately "forced out," and thus, the length of time Plaintiff was subject to Warden Orr's allegedly discriminatory conduct is not clear from the Complaint. Plaintiff's Complaint, however, when viewed in the light most favorable to Plaintiff, asserts more than "isolated incidents." Whether the allegations contained in Plaintiff's Complaint are ultimately sufficient to prove that the discrimination was "severe or pervasive" is a question properly reserved for summary judgment and trial. At this stage of the litigation, Plaintiff has alleged sufficient factual matter to support a reasonable expectation that discovery will reveal evidence that the discrimination was severe or pervasive.

Plaintiff has also pled sufficient factual matter to support the remaining elements of her hostile work environment claim. Plaintiff has alleged facts respecting Warden Orr's treatment of male and female corrections officers generally and treatment of Plaintiff in particular from which one can reasonably infer that Plaintiff suffered intentional discrimination because of her sex.[5] Plaintiff has also alleged that "[d]ue to the continued harassment of the Plaintiff . . . by Warden Orr the work environment became so intolerable that the Plaintiff was forced out of her position" with Defendant Bedford County. (Doc. No. 1 at 3.) Plaintiff has therefore sufficiently pled that the discrimination detrimentally affected her. Plaintiff has also pled facts sufficient to allege a basis for employer liability. "The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Huston v. Procter & Gamble Paper*

---

[5] Defendant cites *Carver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005) for the proposition that "comments made to others or offhanded comments do not constitute a hostile work environment" (Doc. No. 6 at 9). *Carver*, however, held that the plaintiff could not meet the first element of a hostile work environment claim under Title VII "*solely* by pointing to comments that were directed at other individuals." *Carver*, 420 F.3d at 263 (emphasis in original). Here, however, Plaintiff alleges facts respecting conduct and statements made directly to her as well as comments that were overheard either by herself or others. The Third Circuit further noted that although the comments directed at others could not alone be the basis of a hostile work environment claim, evidence of those comments may be considered in determining whether facially neutral conduct on the part of the alleged offenders was actually based on the plaintiff's race. *Id.* at 264.

*Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Where the harasser is a supervisor with immediate (or successively higher) authority over the employee, an employer is subject to vicarious liability to a victimized employee. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998). Plaintiff has alleged that Warden Orr was responsible for the staff at the Prison, including Plaintiff, and had control over Plaintiff's schedule. (See Doc. No. 1 at 2.) From this, one can reasonably infer that Warden Orr was a "supervisor" for purposes of determining employer liability. Cf. *Griffin v. Harrisburg Prop. Servs.*, 421 F. Appx. 204, 209 (3d Cir. 2011) (worker not a supervisor for purposes of determining employer liability where worker had title of "security supervisor" but performed same function as employees he oversaw and was not alleged to be sufficiently senior in the employer's governing hierarchy or to have administrative responsibility over employees under him). Finally, whether the alleged discrimination would in fact detrimentally affect a reasonable person of the same sex in Plaintiff's position is a question properly reserved for summary judgment. At this stage of the litigation, Plaintiff has pled sufficient facts to support a reasonable expectation that discovery will reveal evidence to support this and the other elements of Plaintiff's claim. Further details of Plaintiff's factual allegations may be found once discovery is conducted in this case, and if insufficient evidence is found, Defendant may then pursue a motion for summary judgment.

In sum, Plaintiff has pled sufficient facts to *plausibly* give rise to an entitlement for relief for a hostile work environment claim. Consequently, Defendant's Motion to Dismiss will be denied with respect to both counts of Plaintiff's Complaint.

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 5) is **DENIED**. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLORIA SADLER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:12-133 JUDGE KIM R. GIBSON |
| COUNTY OF BEDFORD, | ) ) ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 18th day of June, 2013, upon consideration of Defendant's Motion to Dismiss (Doc. No. 5) and Plaintiff's opposition thereto, and in accordance with the Memorandum, it is **HEREBY ORDERED** that the Defendant County of Bedford's Motion to Dismiss is **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE